HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GREGORY H. RICE and
ERGOSPACE, CORP.,

        Plaintiffs,

     v.

MERCEDES-BENZ USA LLC,

        Defendant.

CASE NO. C15-904 RAJ

ORDER

## I. INTRODUCTION

This matter comes before the Court on the parties' request for claim construction. Dkt. ## 33, 35.

## II. BACKGROUND

Plaintiffs designed and patented apparatuses "to minimize the stress associated with using" computer pointing devices and computer data entry devices. Dkt. # 5 (Amended Complaint) at ¶¶ 8-9. Plaintiffs are suing Defendant for infringement of these patents as they relate to certain S Class and CL Class automobile palm rests. *Id.* at ¶ 10.

The Court held a *Markman* hearing in this matter on December 8, 2017.

ORDER- 1

## III. LEGAL STANDARD

The Court begins by reciting basic claim construction principles. The specification of a patent begins with a written description, which often includes drawings or illustrations, and "conclude[s] with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112(b). The claims reign supreme over the remainder of a patent; they alone "define the scope of patent protection." *Johnson & Johnston Assocs. Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("[A] patent applicant defines his invention in the claims, not in the [remainder of] the specification."); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257-58 (Fed. Cir. 1989) ("A claim in a patent provides the metes and bounds of the right which the patent confers on the patentee to exclude others from making, using, or selling the protected invention.").

The Court alone determines what patent claims mean. In *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996), the Supreme Court held that claim construction "is exclusively within the province of the court." The "ultimate question of the proper construction of the patent" may be treated "as a question of law." *Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837 (2015). Nevertheless, a court may consult extrinsic evidence and make subsidiary factual findings based thereon, which must be reviewed for clear error. *See id.* at 838.

Although the claims alone define the scope of the invention, construing the claims requires the Court to start with the language of the claims and also to look elsewhere. The Federal Circuit's en banc decision in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) provides comprehensive instructions for navigating evidence relevant to claim construction. The court begins with the language of the claims themselves, which "provide substantial guidance as to the meaning of particular claim terms." *Id.* at 1314; *Amgen Inc. v. Hoechst Marion Roussell, Inc.*, 457 F.3d 1293, 1301 (Fed. Cir. 2006) (citing *Phillips* for the proposition that "claim construction must begin with the words of

the claims themselves"). The court should "generally give[] [claim terms] their ordinary and customary meaning" in the eyes of a person of ordinary skill in the art as of the filing date of the patent. *Phillips*, 415 F.3d at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed Cir. 1996)). In some cases, the ordinary meaning "may be readily apparent even to lay judges," in which case the claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

Beyond the claim language, the remainder of the specification is "always highly relevant to the claim construction analysis." *Id.* at 1315 (quoting *Vitronics*, 90 F.3d at 1582). The specification is dispositive when the inventor uses it to explicitly define a claim term, in which case "the inventor's lexicography governs." *Id.* at 1316. But even where the specification does not explicitly define a term, it may do so implicitly, *id.* at 1321, and in any event is a "concordance for the claims," *id.* at 1315 (citation omitted), on which the Court should "rely heavily," *id.* at 1317. At the same time, a court must toe a fine line "between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim." *Id.* at 1323; *see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001) (describing "reading a limitation from the written description into the claims" as "one of the cardinal sins of patent law").

The final source of "intrinsic evidence" bearing on claim interpretation is the patent's prosecution history. *Phillips*, 415 F.3d at 1317. The prosecution history begins with the inventor's application to the USPTO, and includes all communication between the inventor and the USPTO, culminating in the USPTO's decision to issue the patent. *Vitronics*, 90 F.3d at 1582. An inventor must often disclaim part of the scope of an invention during prosecution to obtain a patent. Where the prosecution history reflects a "clear and unmistakable disavowal of scope," a court must construe the claims accordingly. *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir.

2006). The court must recognize, however, that "the prosecution history represents an ongoing negotiation between the PTO and the applicant," and thus "often lacks the clarity of the specification." *Phillips*, 415 F.3d at 1317. It is nonetheless useful for claim construction, although less so than the specification. *Id.*

Extrinsic evidence is always "less significant" and in general "less reliable" than intrinsic evidence. *Id.* at 1318. Unlike intrinsic evidence, extrinsic evidence is not "created at the time of patent prosecution for the purpose of explaining the patent's scope and meaning." *Id.* The court has discretion to use extrinsic evidence in claim construction, but need not do so. *Id.* at 1319. Indeed, where the intrinsic evidence is adequate to define a claim term, "it is improper to rely on extrinsic evidence." *Vitronics*, 90 F.3d at 1583; *Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc.*, 109 F.3d 739, 744 (Fed. Cir. 1997) ("When . . . the district court has concluded that the patent specification and prosecution history adequately elucidate the proper meaning of claims, expert testimony is not necessary and certainly not crucial.")

## IV. DISCUSSION

### A. Plain and Ordinary Meaning

The purpose of claim construction is to define the proper scope of the invention and to give meaning to claim language when the jury might otherwise misunderstand the claim in the context of the patent and its file history. However, if a claim term is non-technical, in plain English, and derives no special meaning from the patent and its prosecution history, then the court has no need to function as a thesaurus. To do so could well encroach upon the jury's domain. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

The Court has reviewed the following terms and expressly rejects Defendant's proposed construction. The plain and ordinary meaning of each of these terms shall control at trial. *See, e.g.*, *Caluori v. One World Techs., Inc.*, 2010 WL 4794234, *5 (C.D. Cal. Nov. 12, 2010) ("District courts may default to a plain meaning construction in the

face of another party's construction."); *see also AztraZeneca AB v. Dr. Reddy's Labs., Ltd.*, 2010 WL 1981790, at *19–20 (D.N.J. May 18, 2010) (rejecting plaintiff's construction as unsupported, and assigning the ordinary meaning of the term).

- **"Computer Pointing Device"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| Plain and ordinary meaning | "A device for use with personal computers, whereby manipulation of the device results in corresponding movement of a curser on a personal computer screen." | Plain and ordinary meaning controls |

- **"A base that includes an upper surface upon which the computer pointing device may rest"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| Plain and ordinary meaning | "A platform, separate from the computer pointing device and on which a computer pointing device may sit." | Plain and ordinary meaning controls |

- **"Integral motion tracking component"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| Plain and ordinary meaning | "A component which is a part of or formed as a unit with the apparatus, and which tracks motion resulting in corresponding movement of a cursor on a personal computer screen." | Plain and ordinary meaning controls |

- **"Computer data entry device"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| Plain and ordinary meaning | "A device for inputting data for acceptance by a personal computer." | Plain and ordinary meaning controls |

- **"Work Surface:**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| Plain and ordinary meaning | "A surface upon which work is performed." | Plain and ordinary meaning controls |

- **"A base component for supporting the palm support section above the work surface"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| Plain and ordinary meaning | "A component, distinct from the work surface, which holds up or bears the weight of the palm support section above the work surface." | Plain and ordinary meaning controls |

- **"Manipulation of the data entry device along the work surface relative to the palm support section"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| Plain and ordinary meaning | "Movement of the data entry device on the work surface in relation to the palm support section." | Plain and ordinary meaning controls |

B. <u>The Court Construes The Remaining Disputed Terms</u>

- **"Means for coupling"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| **Function**: "coupling the palm support section to the base"<br><br>**Corresponding structure(s):**<br><br>Figs. 3A-3C and 4 ("A non-skid pad 71...) | **Function**: "coupling the palm support section to the base"<br><br>**Corresponding structure(s):**<br><br>"a curvilinear section that couples the hand-support section to the platform | **Function**: "coupling the palm support section to the base"<br><br>**Corresponding structure(s):**<br><br>a curvilinear perimeter section that couples the hand support section and the platform section |

| | | |
|---|---|---|
| Figs. 5A-5B ("The bottom section 86 includes **a non-skid pad 88** … Each of the components comprising palm rest 80 includes either an **interlocking ridge 90, a groove 92**, or both..." ) Fig. 8. Col. 11:34-37 ("it is integrated into the midsection of a split (ergonomic) keyboard 172") | section [which curvilinear section] allows a user to adjust the height of the hand-support section according to user preference and the heights of the individual pointing devices"; or "a somewhat flexible curvilinear perimeter section that couples the hand support section and the platform section" | |

The Court adopts a portion of Defendant's construction. The Court rejects Plaintiffs' construction because it is based on claims that are not in dispute. Plaintiffs predominantly reference Figures 3, 4, and 5 but these figures relate to Claims 15-22, none of which are in dispute in this lawsuit. Plaintiffs' proposed structures do not include "a base that includes an upper surface upon which the computer pointing device may rest," and therefore the structures do not require a "means for coupling the palm support section to the base." *See* '407 patent at 14:41-50; *cf. id*. at 15:41-47 (describing a structure that forms a "recess under the hand support" and that does not include "a base" or a "means for coupling the palm support section to the base.").

The structures that relate to Claims 1, 23, and 24 all include some kind of "curvilinear perimeter section that couples the hand-support section and the base section." '407 patent at 7:67-8:1; Figs. 6-7 (showing a palm support connected to a curved section that connects to a base). This is consistent with the construction provided by Defendant. However, the Court rejects Defendant's characterization of the curvilinear perimeter section as either "somewhat flexible" or as the section that allows the user to adjust the height of the hand support section. The former characterization is asserted as a description related to Figure 6, but this appears to be merely an example and not a standard by which Claim 1 will always abide. *See* '407 patent at 7:67-8:1; *cf. id*. at 10:2

(describing the curvilinear perimeter as a "back end 142 of the palm rest 130" but not including "somewhat flexible" as part of the description).  As to the latter characterization, this is supported by Claim 3, which is not in dispute and which narrows Claim 1.  '407 patent at 14:53-58.  Therefore, the Court concludes that the structure associated with this function is a curvilinear perimeter section that couples the hand support section and the platform section.

- **"Means for limiting movement of the pointing device beneath the palm support section"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| **Function**: "limiting movement of the pointing device beneath the palm support section"  **Corresponding structure(s):**  Figs. 7A, 7B ("**The projection 138 and wall 146** … palm rest 130 and motion tracking component 136 **incorporates a tail to** prevent it from being separated from or falling off the platform section 134) | **Function**: "limiting movement of the pointing device beneath the palm support section"  **Corresponding structure(s):**  "a stop which extends from the back wall to a point approximately midway between the back wall and the front edge of the hand support"; or  "a bumper or stop that extends from the back of the palm rest, along the side walls and toward a front edge of the palm rest" | **Function**: "limiting movement of the pointing device beneath the palm support section"  **Corresponding structure(s):**  "a stop which extends from the back wall to a point approximately midway between the back wall and the front edge of the hand support"; or  "a bumper or stop that extends from the back of the palm rest, along the side walls and toward a front edge of the palm rest"; or  "a wall, which extends downwardly from an underside of the hand-support section." |

1    The Court adopts Defendant's construction in addition to its own construction.
2 The parties agree that the function of this "means for limiting movement" is to limit the
3 movement of the pointing device "beneath" the palm support section. Dkt. ## 33 at 15,
4 35 at 18. This is precisely the terminology of Claim 4. '407 patent at 14:59-61.
5    Plaintiffs' listed structures relate to a separate function: preventing the pointing
6 device "from falling off the platform section[.]" *Id.* at 10:9; Fig. 7B. Preventing the
7 pointing device from falling off the platform is a different function from preventing the
8 pointing device from moving too far beneath the palm support section "and thus beyond
9 the reach of a user's fingertips[.]" '407 patent at 6:43-44; *see also id.* at 9:2-5; Figs. 3A,
10 3C, 6D. In fact, the patent expressly referenced the location-specific term "beneath" with
11 regard to the structures used to prevent the pointing device from sliding under the palm
12 support and not for structures meant to prevent the pointing device from sliding off the
13 base. *See, e.g.*, '407 patent at 9:2-5 ("A bumper or stop 116 that prevents the computer
14 mouse from being too far beneath the hand-rest section 96 may also be formed by a seam
15 sewn into the fabric sleeve 114."). Therefore, the Court adopts Defendant's construction
16 in addition to recognizing that a further structure meets the requirements of this function.
17 *See id.* at 10:5; Fig. 7B (showing that the wall 146 could prevent the pointing device 136
18 from sliding too far beneath the palm support section 132).

- **"Means for limiting movement of the data entry device beneath the palm support section"**

| Plaintiffs' Construction: | Defendant's Construction: | Court's Construction: |
|---|---|---|
| **Function**: "limiting movement of the data entry device beneath the palm support section" | **Function**: "limiting movement of the data entry device beneath the palm support section" | **Function**: "limiting movement of the data entry device beneath the palm support section" |
| **Structure(s):** | **Structure(s):** | **Structure(s):** |
| Figs. 7A, 7B, Col. 10:22-38 ("The projection 138 | "a bumper or stop that extends from the back of | "a stop which extends from the back wall to a point |

| | | |
|---|---|---|
| and wall 146 cooperatively work to prevent… [and] … a tail to prevent it from being separated from or falling off the platform section 134...") | the palm rest, along the side walls, and toward a front edge of the palm rest." | approximately midway between the back wall and the front edge of the hand support"; or<br><br>"a bumper or stop that extends from the back of the palm rest, along the side walls and toward a front edge of the palm rest"; or<br><br>"a wall, which extends downwardly from an underside of the hand-support section." |

The parties advance nearly identical arguments to those they made for this similar means-plus-function limitation in the '407 patent. Accordingly, the Court construes this means-plus-function limitation in the same way it construed the similar term in the '407 patent.

V.  **CONCLUSION**

For the foregoing reasons, the Court adopts the above constructions set forth in this opinion for the disputed terms of the patents-in-suit. The parties are ordered that they may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.

Dated this 14th day of December, 2017.

*Richard A. Jones*
———————————————
The Honorable Richard A. Jones
United States District Judge